IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NEENA S., A MINOR, BY AND THROUGH | : | CIVIL ACTION |
| HER PARENTS, ROBERT AND TAMI S., | : | NO. 05-5404 |
| AND ROBERT AND TAMI S., ADULTS, | : | |
| INDIVIDUALLY, AND ON THEIR OWN | : | |
| BEHALF | : | |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA | : | |

O'NEILL, J.                                                December 19, 2008

MEMORANDUM

On October 19, 2006, plaintiffs Neena S., a minor, by and through her parents Robert and

Tami S., and Robert and Tami S., individually and on their own behalf, filed a complaint[1] against

defendant the School District of Philadelphia challenging the final decision of the Pennsylvania

Special Education Appeals Panel and seeking compensatory damages, the removal of the

restrictions on the compensatory education awarded for the 1997-1998 school year through the

2001-2002 school year and compensatory education for the 2002-2003 school year through June

15, 2005.  Plaintiffs seek such relief under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. §§ 1400 et seq. (2007),  42 U.S.C. § 1983 of the Civil Rights Act and

Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 795 et seq.  Before me now are the parties'

cross-motions for summary judgment, the responses thereto and the administrative record.

---

[1] As discussed below in greater detail, plaintiffs previously filed a complaint on October
17, 2005.  The case was remanded on March 27, 2006.  Plaintiffs have filed this complaint
challenging the findings of the hearing officer and the Panel made on remand for the period of
the 1997-1998 school year through January 9, 2004 and the findings made by the hearing officer
and the Panel prior to remand for the period of January 10, 2004 through June 15, 2005.

1

BACKGROUND

Plaintiff Neena S. was a twenty-year-old adult at the time of filing of these motions who during all times relevant to this litigation was a resident of the School District of Philadelphia and eligible for special education services under the IDEA.  The District is a publicly-funded school district designated by the Commonwealth of Pennsylvania as the local educational agency responsible for providing Neena with a free appropriate public education (FAPE).

Neena attended kindergarten in the district for the 1992-1993 school year and then transferred to parochial school.  Neena received an initial psychological evaluation for special education services in 1996 while in parochial school by CORA Services, Inc., a testing institution.  The evaluation concluded that Neena had a specific learning disability with deficits in the areas of reading, spelling and math.

Neena began attending a full-time learning support classroom at the Mayfair Elementary School in the District during her 1997-1998 fourth grade year.  She remained at Mayfair through her 2001-2002 eighth grade year.  Neena attended Lincoln High School, in part, and Frankford High School, in part, during her 2002-2003 ninth grade year, her 2003-2004 second ninth grade year and her 2004-2005 third ninth grade year.

Neena received an individualized education plan (IEP) in November 1997 for fourth grade, on November 9, 1998 for fifth grade, on November 30, 1999 for sixth grade, on March 23, 2001 for seventh grade[2] and on October 29, 2001 for eighth grade.  These IEPs and other IEPs up to January 2004 were determined to be inappropriate by the hearing officer and the Panel in the

---

[2]  Neena's previous IEP expired on November 30, 2000 and there is no explanation in the record for the gap.

decisions they made on remand.  The District does not contest this finding so I will not detail the

IEPs' inadequacies.

In July 2002, Neena received an independent evaluation from Dr. Margarat Kay.  After

testing, Dr. Kay noted that Neena did not evidence any significant social or emotional difficulties

that would adversely affect her academic performance and that Neena might become anxious and

reactively depressed without sufficient intervention.  Dr. Kay recommended "an appropriate

program of specially designed instruction to improve her basic academic skills" and offered

classroom-based suggestions.

Sometime after this evaluation, an undated "Phyisician's Referral for Homebound

Instruction" document was filled out and signed by Ray Newstadt.  The document noted that

Neena was unable to attend school because of phobias and depression.  The individual who

signed the document did so in the block marked "Physician's Signature" and stated he was a

CAC[3] from New Start Associates.  Mr. Newstadt also wrote a letter to plaintiffs' attorney dated

March 6, 2003.  The letter stated that Dr. Kay evaluated Neena in August 2003 at her parent's

request because of Neena's sever anxiety and learning disorder.  Mr. Newstadt stated in his letter

that Neena had been in counseling with him since December 2002 for "Social Anxiety Disorder"

and that she should be granted alternative compensatory education and given homebound

instruction until placed in an alternative school to meet her needs.

_____

[3]  The position title for the abbreviation CAC is unclear.  The hearing officer states a
belief that it stands for Certified Addictions Counselor and this title has not been challenged or
another title proposed.  No evidence of addiction issues exists in the record or was considered by
the hearing officer or the Panel.  The title was only relevant in the hearing officer's decision to
the question of whether this document was signed by a physician.

Neena was enrolled in ninth grade at Lincoln High School for the 2002-2003 school year and was to receive special education learning support.  Neena did not attend school during this year.  Her parents claimed they did not want to send Neena to Lincoln High School due to her lack of progress in reading and her anxiety about school.  An IEP team convened on November 5, 2002 but plaintiffs did not attend.  Neena withdrew from school on November 8, 2002.

Neena did not attend school during the 2003-2004 school year.  However, a Wilson-Certified Reading Instructor saw Neena at home for instruction from June 23, 2003 to June 7, 2004.  In a February 2004 reevaluation, Neena's mother stated that she was reluctant to have Neena return to Lincoln High School because of anxiety Neena experienced with her reading problems and stated a preference for homebound instruction.

The March 15, 2004 IEP included a behavior support plan to address the truancy but it was not completed because plaintiffs did not attend the meeting.  The IEP team reconvened on June 7, 2004 to finish developing the IEP because Neena was opposed to attending Lincoln High School.  Neena also objected to attending Frankford High School.  The IEP contained a Functional Behavior Assessment and Behavior Plan addressing Neena's attendance.  Alternatives were also offered to Neena including an abbreviated school day, the Twilight Program and a work-study program with placement at a beauty salon.

In September 2004, the District received a letter requesting homebound instruction and attaching a letter from Neena's therapist Mr. Newstadt.  Additionally, a prescription pad was presented from John P. Leichner, M.D., Ph.D, "General and Vascular Surgeon" that stated that Neena was unable to attend school because of dyslexia and an extreme anxiety due to personal insults and ridicule in school.  This prescription also stated she required special schooling.

4

The Truancy Court ordered Neena to attend the Lindamood Bell private program from October 18, 2004 to November 23, 2004.  Neena attended the program for 10 of the 26 treatment days from October 18, 2004 to November 2, 2004 and for 10 of the 14 days from November 2, 2004 to November 22, 2004.  Neena stated that she liked the program but did not like the length of the commute.

The Truancy Court terminated the District's funding of the Lindamood Bell program because of Neena's attendance record and ordered that Neena return to school.  There is testimonial evidence that at a March 8, 2005 Truancy Court hearing the District again offered to provide Neena with a Wilson Certified tutor.  At the time of the first hearing, Neena was attending between two and two-and-a-half hours per day at Frankford High School receiving reading and math instruction.  Plaintiffs requested the hourly limitation.

Neena's absences from school include the following:  1992-1993 kindergarten school year- 22 unexcused and 2 excused absences; 1997-1998 fourth grade school year - 27 unexcused; 1998-1999 fifth grade school year - 16 unexcused and 5 excused absences; 1999-2000 sixth grade school year - 33 unexcused and 2 excused absences; 2000-2001 seventh grade school year - 10 unexcused and 18 excused absences; and 2001-2002 eighth grade school year - 32 unexcused and 22 excused absences.  As discussed above, Neena had numerous absences, if not a complete lack of attendance, for the 2002-2005 school years.  In response to the absences, individuals from the District testified that numerous telephone calls were made and letters sent between Neena's parents and the attendance officer, that the guidance counselor had conversations with Neena, that the principal visited Neena at home twice, that referrals were made to the District's attendance court, that truancy notices were served in April 2000, January 2001 and May 2002

5

and that Neena had to appear in Truancy Court.  Later efforts were made to offer Neena the option of attending an abbreviated school day, the Twilight Program, a work-study program with a beauty salon and another high school.

In 2005,[4] her parents requested a hearing pursuant to 34 C.F.R. § 300.507 seeking compensatory education.  A hearing officer held a due process hearing over two sessions on March 22, 2005 and June 29, 2005.  On July 19, 2005, the hearing officer entered a decision denying relief after finding that the District had offered Neena a FAPE for the one-year period of January 2004 to June 2005 and that Neena was not entitled to compensatory education.  The hearing officer found the District's witnesses to be credible.  She also found Neena's parents honest but found the prescription for special schooling and Mr. Newstadt's "Physician's Referral for Homebound Instruction" and letter misleading at best.

The hearing officer found that the March and June 2004 IEPs satisfied the requirements of the IDEA and was reasonably calculated to provide meaningful educational benefit especially given the limitation that the District faced in developing the IEPs because it could not observe Neena in the school setting due to her absences.  The hearing officer stated that the IEP could not be implemented until approximately March 2005 due to Neena's involvement in other programs

---

[4] In December 2004, Congress amended the IDEA to add a two-year statute of limitations for initiating state-level due process hearings.  Laura P. v. Haverford Sch. Dist., 2008 WL 5000461, at *10 (E.D. Pa. Nov. 21, 2008), citing Lawrence Twp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 370 (3d Cir. 2005).  The amendment went into effect on July 1, 2005, and required a parent to request a due process hearing within two years of the date the parent knew or should have known about the alleged action forming the basis of the complaint.  20 U.S.C. § 1415(f)(3) (C).  Previously, there was no limitations period for initiating state-level due process proceedings seeking compensatory education in the Third Circuit.  Terance D. v. Sch. Dist. of Phila., 570 F. Supp.2d 739, 743-45 (E.D. Pa. 2008), citing Ridgewood v. N.E., 172 F.3d 238, 250 (3d Cir. 1999).  In this case, plaintiffs filed their initial due process hearing request prior to the date the statute became effective and therefore the two-year statute of limitations does not apply.

and her absences.  She also stated that a finding that the District did not provide a FAPE would blame the District for Neena's absences which she stated she would not do because the student refused the services offered to her including a choice of Lincoln or Frankford High School, a modified school day, the Twilight Progam and a work-study program in cosmetology.  The hearing officer noted that Neena's parents had the primary responsibility for ensuring her attendance and that in this case they enabled her to stay at home or move to her boyfriend's home where she was out of their control.  The hearing officer also questioned the legitimacy of the documentation and requests of Neena's parents for homebound instruction.

Her parents filed timely exceptions to the hearing officer's order pursuant to 22 Pa. Code. § 14.162(o) which mandates a review of the hearing officer's decision by a panel of three appellate hearing officers.  On August 23, 2005, a Pennsylvania Special Education Appeals Panel affirmed the decision.  The Panel stated that regardless of whether it determined a FAPE was denied for this period, the parents and students' actions in consistently failing to avail themselves of the District's good faith offers amounted to a forfeit.  The Panel noted the student's absences including her minimal attendance at the court-ordered Lindamood-Bell private programming, the parents' "spurious applications" for homebound instruction and faulted the parents and Neena for not taking advantage of the twilight program or the work-study program in cosmetology.  The Panel also addressed plaintiffs' exceptions and stated that the hearing officer's alleged failure to provide documentary evidence for every factual finding was at most harmless error, that it was not outcome-determinative[5] and that it was "picking nit."  The Panel affirmed the decision but

---

[5]  Plaintiffs claim that the hearing officer in both opinions improperly discussed Neena's pregnancies and that this was prejudicial.  The Panel in its opinion for the January 10, 2004 through June 15, 2005 period addressed plaintiffs' concern over the reference to Neena's

noted that the IEPs were far from optimal and that the hearing officer too easily rejected the link between Neena's SLD or resulting school phobia and her lack of attendance. The Panel deferred to this rejection because substantial evidence supported it. The evidence included the counselor's testimony that during meetings regarding attendance issues no evidence of school phobia was detected. The Panel also referenced evidence from the record that teachers' reports showed lack of motivation as a reason for poor attendance, and a Functional Behavior Assessment hypothesized reasons for Neena's poor attendance that included concerns with academic failure, a need for adult attention, a need to control her parents and other adults, a concern for her physical security and poor motivation for appropriate behavior. Additionally, the Panel stated that Dr. Kay's evaluation which noted a lack of any significant social or emotional difficulties that would adversely affect her educational performance supported the rejection of the link between Neena's SLD and her lack of attendance.

Neena's parents appealed to this Court challenging the limitation of the period to January 2004 to June 15, 2005 and the finding that the District did not deny Neena a FAPE during this period. On March 27, 2006, I held that the statute of limitations imposed by the hearing officer on July 19, 2005 and affirmed by the Panel on August 23, 2005 did not apply to this case and I remanded the case to determine what compensatory education if any should be awarded.

---

pregnancies by stating they were "only noted in passing and the [p]arents' own testimony characterized them as part and parcel of [Neena's] attendance-avoiding choices." Neena's absences weighed heavily in whether she received a FAPE or was entitled to compensatory education, regardless of what the reasons for the absences may or may not have been. A review of the administrative record finds the pregnancy comments were made in passing and were therefore not prejudicial, albeit unnecessary to include in the decisions as listing the absences was sufficient.

The hearing officer issued a decision July 22, 2006 without the submission of additional evidence[6] and concluded that Neena was not offered a FAPE from February 1998 through January 9, 2004[7] because her IEPs were inappropriate which contributed toward a lack of meaningful progress.[8]  The following compensatory education was awarded for this period:  three hours per day for every day Neena attended school from February 10, 1998 to the end of the 1997-1998 school year; three hours per day for every day Neena attended school during the 1998-1999 through 2000-2001 school years; four hours per day for every day Neena attended school during the 2001-2002 school year; and no compensatory education for 2002-2003 school year through January 9, 2004.  Three hours of the compensation awarded each day from February 10, 1998 to the 2001-2002 school year was specified for one hour of reading, one hour of math and one half hour for science and social studies.  The additional fourth hour per day of compensation awarded in 2001-2002 was for the District's failure to justify the decision to move Neena to a more restrictive environment.  The refusal to award compensatory education for the 2002-2003

---

[6]  Although plaintiffs claim that they were not allowed to submit additional evidence, the hearing officer provided plaintiffs the opportunity to make an offer of proof identifying the documents and witnesses they intended to introduce and after review the hearing officer determined no additional evidence was presented other than what was already before the hearing officer.  The hearing officer permitted the submission of any additional documentary evidence and the exceptions and responses to her original decision.  She deemed the expert's report and his proposed testimony irrelevant.  Plaintiffs have not challenged this ruling but merely stated it while reciting the history of the case.

[7]  On remand, the hearing officer did not reconsider the January 10, 2004 through June 15, 2005 period.

[8]  Plaintiffs' recitation of the facts states that the hearing officer improperly concluded that the District had not denied Neena a FAPE during the 2002-2003 school year through January 2004.  However, the hearing officer found that the District did not offer Neena a FAPE during this period, but she awarded no compensatory education.

school year through January 9, 2004 was based on Neena's failure to attend school during this period. The hearing officer further limited the compensatory education to allow the parents to use it for reading and mathematics skill-building and/or vocational counseling and training which the hearing officer noted would make up for the prior deprivation of service.

Her parents appealed the hearing officer's restrictions on Neena's use of compensatory education to the Appeals Panel which affirmed the decision on August 18, 2006.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment as a matter of law "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where, as here, cross-motions for summary judgment have been presented, we must consider each party's motion individually. Each side bears the burden of establishing a lack of genuine issues of material fact." Reinert v. Giorgio Foods, Inc., 15 F. Supp.2d 589, 593-94 (E.D. Pa. 1998).

Any party aggrieved by a state educational agency's findings and decisions made under the IDEA has the right to bring a civil action in a district court without regard to the amount in controversy. See 20 U.S.C. § 1415(i)(2)(A). In reviewing administrative findings and decisions under the IDEA, a district "court – (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).

"Judicial review in IDEA cases differs substantively from judicial review in other agency actions, in which the courts are generally confined to the administrative record and are held to a highly deferential standard of review." Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 757 (3d Cir. 1995). In IDEA cases, district courts are required to give "due weight" to the factual findings of the state administrative agency. Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982). The Court of Appeals has defined "due weight" as "modified de novo review." S.H. v. State-Operated Sch. Dist., 336 F.3d 260, 270 (3d Cir. 2003). Under this standard, "a district court is required to make findings of fact based on a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." Id., quoting Knable v. Bexley City Sch. Dist., 238 F.3d 755, 764 (6th Cir. 2001). "Factual findings from the administrative proceedings are to be considered prima facie correct. [I]f a reviewing court fails to adhere to them, it is obliged to explain why." Id., quoting M.M. v. Sch. Dist. of Greenville County, 303 F.3d 523, 530-31 (4th Cir. 2002) (citations omitted). The district court is not, however, to substitute its own notions of educational policy for those of local school authorities. Id. The court "must accept the state agency's credibility determinations unless the nontestimonial, extrinsic evidence in the record would justify a contrary conclusion." L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 n.4 (3d Cir. 2006). If new evidence is received, however, it may "accept or reject the agency findings depending on whether those findings are supported by the new, expanded record and whether they are consistent with the requirements of the Act." S.H., 336 F.3d at 270.

DISCUSSION

I.      Section 1983 Claim

The Court of Appeals has held that the provisions of the IDEA "create an express, private means of redress [which] means that a § 1983 action is not available to remedy violations of IDEA-created rights, absent some 'textual indication, express or implicit, that the [statutory] remedy is to complement, rather than supplant, § 1983.'" A.W. v. Jersey City Public Schools, 486 F.3d 71, 803 (3d Cir. 2007), en banc, quoting City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 122 (2005).  Looking to the text of the IDEA – specifically § 1415(l) – the Court of Appeals held that because Congress provided the IDEA with a comprehensive remedial scheme, Congress did not intend § 1983 to be available to remedy violations of the rights secured by the IDEA.  Id., finding that "the Court has continued to refer to the IDEA as an example of a statutory enforcement scheme that precludes a § 1983 remedy."

In A.W., the Court of Appeals also addressed whether Congress intended to allow rights granted in Section 504 of the Rehabilitation Act to be remedied through a § 1983 action and similarly concluded that "§ 1983 is not available to provide a remedy for defendants' alleged violation of [student's] rights under Section 504." Id. at 806.  The Court noted that "[t]here is no showing that the remedial scheme in Section 504 was intended 'to compliment, rather than supplant, § 1983.'" Id. at 805, citing Rancho Palos Verdes, 544 U.S. at 122.

Because there is no remedy available under § 1983 for violations of the IDEA and Section 504 and plaintiffs no longer intend to pursue their claims under § 1983, I will enter judgment in favor of the District with respect to plaintiffs' § 1983 claim.

II.   IDEA and Section 504 Claims

The IDEA and Section 504 claims are similar causes of actions.  The IDEA imposes an affirmative duty on states which accept certain federal funds to provide a FAPE for all their disabled children.  20 U.S.C. § 1411 (2005); Lawrence Tp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 370 (3d Cir. 2005), citing 20 U.S.C. § 1412(a)(1).  Section 504 is a negative prohibition against disability discrimination in federally-funded programs. 29 U.S.C. § 794(a) (2002). Plaintiffs seek compensatory education and damages under both statutes.

A.   Compensatory Education

1.   IDEA

Congress enacted the IDEA, 20 U.S.C. §§ 1400 et seq., to provide federal assistance to states in educating disabled children.[9]  In order to receive funding under the IDEA, a state must ensure that a FAPE is "available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive . . . ."  20 U.S.C. § 1412(a)(1)(A).  "This education must be tailored to the unique needs of the disabled student through an individualized education program [IEP]." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999), citing Bd. of Educ. v. Rowley, 458 U.S. 176, 181-82 (1982).  The IDEA defines a FAPE "pursuant to an IEP to be an educational instruction 'specially designed . . . to meet the unique needs of a child with a

_____

[9]  Under the IDEA, "'a child with a disability' means a child – (i) with mental retardation, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (hereinafter referred to as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special education and related services."  20 U.S.C. § 1401(3)(A).

disability,' § 1401(29), coupled with any additional 'related services' that are 'required to assist a child with a disability to benefit from [that instruction],' § 1401(26)(A)."  Winkelman v. Parma City Sch. Dist., 127 S. Ct. 1994, 2000-01 (2007).  In examining the parameters of a FAPE, the Court of Appeals has held that "the IDEA 'calls for more than a trivial educational benefit' and requires a satisfactory IEP to provide 'significant learning' and confer 'meaningful benefit.'"  Id., quoting Polk v. Cent. Susquehanna Intermediate Unit 16, 853 F.2d 171, 182 & 184 (3d Cir. 1988), citations omitted.

"If the compensatory education standard is to spring from [IDEA], it must focus from the outset upon the IEP – the road map for a disabled child's education."  M.C. v. Cent. Reg'l Sch. Dist., 81 F.3d 389, 396 (3d Cir. 1996).[10]  "'When an IEP fails to confer some (i.e., more than de minimis) educational benefit to a student, that student has been deprived of the appropriate education guaranteed by [the] IDEA' and compensatory education is appropriate."  Penn Trafford Sch. Dist. v. C.F., 2006 WL 840334, at *9 (W.D. Pa. Mar. 28, 2006), citing M.C., 81 F.3d at 395. The Court of Appeals further has "rejected the notion that what was 'appropriate' could be reduced to a single standard, holding the benefit 'must be gauged in relation to the child's potential.'"  Id., citing Polk, 853 F.2d at 185, citations omitted.

"An award of compensatory education allows a disabled student to continue beyond age

---

[10]  The IEP is developed by an "IEP Team," which includes the child's parents, at least one regular education teacher of the child, at least one special education teacher of the child, a representative of the local educational agency, an individual who can interpret the instructional implications of evaluation results, other individuals who have knowledge or special expertise regarding the child, and, whenever appropriate, the child with a disability.  20 U.S.C. § 1414(d)(1)(B).  The IEP Team shall "in the case of a child whose behavior impedes his or her learning or that of others, consider, when appropriate, strategies, including positive behavioral interventions, strategies, and supports to address that behavior."  20 U.S.C. § 1414(d)(3)(B)(i).

twenty-one in order to make up for the earlier deprivation of a free public education."
Ridgewood, 172 F.3d at 249, citing M.C., 81 F.3d at 395.   The Court of Appeals has "held that
the right to compensatory education accrues when the school knows or should know that its IEP
is not providing an appropriate education."  Id., citing M.C., 81 F.3d at 396-97.  If a school
district fails to correct the situation, "a disabled child is entitled to compensatory education for a
period equal to the period of deprivation, but excluding the time reasonably required for the
school district to rectify the problem."  M.C., 81 F.3d at 397.

        "[I]t is the responsibility of the child's teachers, therapists, and administrators – and of
the multi-disciplinary team that annually evaluates the student's progress – to ascertain the
child's educational needs, respond to deficiencies, and place him or her accordingly."  M.C., 81
F.3d at 397.  "[A] child's entitlement to special education should not depend upon the vigilance
of the parents (who may not be sufficiently sophisticated to comprehend the problem) nor be
abridged because the district's behavior did not rise to the level of slothfulness or bad faith."  Id.;
see also Ridgewood, 172 F.3d at 249, noting "an award of compensatory education does not
require a finding of bad faith or egregious circumstances."

        a.      1997-1998 School Year to 2001-2002 School Year

        The hearing officer and the Panel concluded that the IEP offered to Neena for each of the
school years from 1997-1998 to 2001-2002 was inappropriate and contributed toward a lack of
meaningful progress.  As previously noted, Neena was therefore awarded compensatory
education with the restrictions listed above.  The District does not challenge these findings.
Based on a review of the evidence contained in the complete record and giving due weight to the

fact findings of the administrative proceedings, I conclude that the District knew or should have known that Neena was not receiving an appropriate education during this period and that the hearing officer and the Panel correctly determined that Neena was denied a FAPE during this period.

Although they agree with the finding that Neena was denied a FAPE during this period, plaintiffs challenge the restrictions placed on the award of compensatory education.  Plaintiffs claim that Neena is entitled to full days of compensatory education without the hourly restrictions and without the limitation imposed on the use of the compensatory education.

First, plaintiffs claim that the hearing officer and Panel incorrectly limited Neena's use of the compensatory education award to services in reading and mathematics skill-building and/or vocational counseling and training.  Many of the Special Education Appeals Panel decisions cited by plaintiffs to support their claim address the parents' ability to choose appropriate services from any reasonable educational, habilitative, theraputic or recreational program provider.  Additionally, the statement in <u>Damien J. v. School District of Philadelphia</u>, 2008 WL 191176, at *7 n.16 (E.D. Pa. Jan. 22, 2008) that it would be illogical to require that the student receive compensatory education through the District that denied the student a FAPE in the first place addresses the same issue.  Nothing in the hearing officer or the Panel's restrictions suggest that plaintiffs are limited to receiving services from the District and therefore these decisions are not dispositive.  The restrictions limit services to the areas that will compensate her for the education of which she was deprived.  Plaintiffs' reference to Appeals Panel decisions that the parents should determine the nature of the compensatory education for their child and may use the compensatory education for any proper educational service does not provide me with any

reason to alter the findings of the hearing officer and the Panel that limited the services to the specific areas where Neena was denied a FAPE.  The decisions plaintiffs cite do not support their contention that the restrictions imposed on the use of the awarded compensatory education were erroneous, only that the hearing officer was not required to impose them.

Second, plaintiffs challenge the hearing officer and the Panel's computation of the award of compensatory education claiming the award should have been for full days.[11]  Plaintiffs claim that <u>Lester H. by Octavia P. v. Gilhool</u>, 916 F.2d 865 (3d Cir. 1990), <u>Keystone Cent. School Dist. v. E.E. ex rel. H.E.</u>, 438 F. Supp.2d 519, 525-26 (M.D. Pa. 2006) and <u>Keystone's</u> confirmation in <u>Damian J.</u>, 2008 WL 191176, at *7 n.16 stand for the proposition that full days of compensatory education must be awarded.  In <u>Lester H.</u>, the Court found that the award of full days to compensate Lester for his inappropriate placement in the school was proper but that the court did not hold that full days must be awarded in every situation.  Additionally, in <u>Keystone</u>, the administrative body awarded full days though the District argued that the administrative body should have determined the exact amount of hours the student was denied a FAPE and compensate for that number of hours.  The Court refused to place the "arduous and near impossible task" requested from the District on the administrative bodies.  Here, the administrative bodies assumed the task of determining the exact hours of Neena's denial of FAPE.  No language in <u>Keystone</u> or <u>Damian J.</u> suggests that the administrative bodies cannot make this determination.

_____

[11] The District claims this objection was not pled in the complaint following remand. However, the complaint challenged the restrictions on the award of compensatory education and I will therefore address this claim.

Additionally, although plaintiffs provide case law supporting that full days may be awarded and an administrative body need not apportion the award based on the exact deprivation of services, plaintiffs have not provided any case law supporting the proposition that administrative bodies are prohibited from making such apportionments.  Case law also discloses that less than full days have been awarded in other situations.  See e.g. D.H. v. Manheim Twp. Sch. Dist., 2005 U.S. Dist. LEXIS 39756, at *18 (E.D. Pa. Nov. 29, 2005), finding the compensatory education award of 1.5 hours per day of the school year appropriate.

Based on an independent analysis of the evidence, I find that the hearing officer and the Panel did not err in the hourly awards for Neena's fourth through eighth grade years (1997-1998 through 2001-2002).  Given Neena's specific educational needs, 3 hours per day from February 10, 1998 through the 2000-2001 school year and four hours per day for the 2001-2002 school year is a reasonable estimate of the amount of educational services denied to Neena during this period.  In light of the weight due to administrative proceedings and in the absence of evidence in the record to contradict the findings, I find no error with this award or its restrictions.  Therefore, I agree with the hearing officer and the Panel's decision and find Neena is entitled to the compensatory education as awarded for the 1997-1998 school year through the 2001-2002 school year.

      b.      2002-2003 school year to January 9, 2004

Plaintiffs challenge the denial of compensatory education for the 2002-2003 school year to January 9, 2004.  The District argues that plaintiffs failed to exhaust the available administrative remedies for the 2002-2003 school year to January 9, 2004 period and therefore

judicial review is inappropriate.  Plaintiffs do not respond to the exhaustion argument and instead stated that they raised this issue to the Panel.

As set forth above, each state must establish a procedure where disputes involving the IDEA can be resolved through an administrative review hearing or "due process" hearing.  20 U.S.C. §§ 1415(f)-(i).  The IDEA administrative exhaustion requirement "allows a school district to bring its expertise to bear and affords the state an opportunity to correct its own mistakes." James S. ex rel. Thelma S. v. Sch. Dist. of Phila., 559 F. Supp.2d 600, 616 (E.D. Pa. 2008), citing McKart v. United States, 395 U.S. 185, 193-95 (1969).  Pennsylvania has implemented a two-tiered system where a hearing is initially conducted by a hearing officer if parents disagree with the school district's evaluation, placement or provision of a free and appropriate education to their child.  See 22 Pa. Code § 14.162.  If appealed, the hearing officer's decision is reviewed by a three-member Special Education Appeals Panel.  Id. at § 14.162(o); Marple Newtown Sch. Dist. v. Rafael N., 2007 WL 2458076, at *1 (E.D. Pa. Aug. 23, 2007).  After the appeals panel renders a final administrative decision, either party has the right to bring a civil action in federal or state court.  20 U.S.C. § 1415(i)(2); Marple Newtown Sch. Dist., 2007 WL 248076, at *1. The Court of Appeals noted that it is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court.  Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994).   Thus, a civil action can be brought in a federal district court only after this two-tiered system has been exhausted.  20 U.S.C. § 1415(i)(2)(A); Kristi H. ex rel. Virginia H. v. Tri-Valley Sch. Dist., 107 F. Supp.2d 628, 631 (M.D. Pa. 2000).

Plaintiffs did appeal the hearing officer's decision to the Panel, but their brief raised and argued only one exception to the decision; the restrictions in Neena's use of compensatory education from February 10, 1998 through the 2001-2002 school year.  Plaintiffs did not address the denial of compensatory education for the period at issue in their exceptions to the hearing officer's decision.  Therefore, although it provided a full recitation of the background, the Panel addressed only the exception raised regarding the restrictions on the compensatory award for the 1997-1998 school year through the 2001-2002 school year.  The Panel was not required to make an independent review of the entire hearing officer's decision and all matters challenged at the due process hearing regardless of whether plaintiffs asserted the issues on appeal to the Panel. See Kristi H., 107 F. Supp.2d at 632, finding that the Panel was not required to address the three school years that were not appealed and those years were unexhausted when five years were addressed by the due process officer and an appeal was taken only with respect to only two of the years.  Nothing in the law required the Panel to address the years that were not appealed and administrative remedies are not exhausted with respect to those years.  See id.  With no exception taken for the years at issue to the Panel, the state was not given the opportunity to review such claims and my review is therefore inappropriate.  I conclude that for the years in question, the plaintiffs failed to exhaust the available administrative remedies.

Exceptions to the general rule of exhaustion of administrative remedies have been recognized:  (1) where exhaustion would be futile or inadequate; (2) where the issue presented is purely a legal question; (3) where the administrative agency cannot grant the requested relief; and (4) where exhaustion would work severe or irreparable harm upon a litigant.  Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994).  Plaintiffs do not allege and I do not

find that any of these exceptions excuse plaintiffs' failure to exhaust the available administrative remedies for this period.

Alternatively, even if plaintiffs had exhausted this claim, their claim would fail on the merits.  The hearing officer and the Panel found the IEPs inappropriate during this period but awarded no compensatory education because Neena did not attend school at all during this period.  "[A] disabled child is entitled to compensatory education for a period equal to the period of deprivation."  M.C., 81 F.3d at 397.  The deprivation has been calculated in other cases by the number of school days in the year less any days the student was not in attendance.  See e.g., Heather D. v. Northampton Area Sch. Dist., 511 F. Supp.2d 549, 558 (E.D. Pa. 2007), affirming the Panel's compensatory education award of ten hours per week for the time that Heather was in school during fourth and fifth grade; Lauren P. v. Wissahickon Sch. Dist., 2007 WL 1810671, at *8 (E.D. Pa. June 20, 2007), awarding compensatory education for the school years less the days Lauren was absent; Derrick F. v. Red Lion Area Sch. Dist., 2006 WL 2547050, at *4 (M.D. Pa. Sept. 1, 2006), noting that the compensatory education was offered only for the days Derrick attended school.  Plaintiffs have not provided me with any authority for the proposition that calculating the deprivation for a compensatory education award with consideration of the student's absences is erroneous.  Thus, if Neena did not attend school at all for the period at issue, she was entitled to no compensatory education.  There is no evidence that the Panel's statement of Neena's attendance record is erroneous.

I will therefore deny plaintiffs' motion for summary judgment for the period covering the 2002-2003 school year to January 9, 2004 and grant the District's motion on this issue.

21

c.      January 10, 2004 to June 15, 2005 Period

In the July 19, 2005 decision, the hearing officer addressed the January 10, 2004 to June 15, 2005 period and found that the District had offered Neena a FAPE and that she was not entitled to compensatory education.  Plaintiffs appealed to the Panel which affirmed this decision.  Plaintiffs raised this issue in the complaint filed October 17, 2005.  On remand, this period was not addressed by the hearing officer or the Panel.  While it is unclear whether plaintiffs had to raise their objections to the denial of compensatory education for this period again on remand, I will address the claims for this period.  Plaintiffs claim that the hearing officer wrongly concluded that the March 15, 2004 and June 7, 2004 IEPs were reasonably calculated to provide a meaningful educational benefit and incorrectly blamed plaintiffs for Neena's lack of attendance.

The issue of whether an IEP is appropriate is a question of fact.  S.H., 336 F.3d at 271, citing Carlisle Area School District v. Scott P., 62 F.3d 520, 526 (3d Cir. 1995).  An appropriate IEP does not need to provide for the best possible education but instead must be "reasonably calculated to enable the child to receive educational benefits."  Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982).  This requires more than just a de minimis educational benefit and mandates the undertaking of a student-by-student analysis that carefully considers the individual student's abilities.  Ridgewood, 172 F.3d at 248.  The proffered IEP must then provide for "significant learning and meaningful benefit."  Id. at 247.  However, "districts need not provide the optimal level of services, or even a level that would confer additional benefits, since the IEP required by [the] IDEA represents only a basic floor of opportunity."  S. v. Wissahickon Sch. Dist., 2008 WL 2876567, at *7 (E.D. Pa. July 24, 2008), citing Carlisle, 62 F.3d at 534, citations omitted.

22

Whether an IEP is appropriate "can only be determined as of the time it is offered to the student, and not at some later date."  Fuhrmann v. East Hanover Bd. Of Educ., 993 F.2d 1031, 1040 (3d Cir. 1993).  Accordingly, Neena's ultimate failure to make progress, viewed with the benefit of hindsight, does not necessarily render the IEPs inadequate.  Id., citing see Carlisle, 62 F.3d at 534.

Plaintiffs claim that the March 15, 2004 IEP failed to specify any services that the District would provide as it listed a goal for attendance but no specially designed instruction and no provisions for a functional assessment of behavior or behavior management plan and a goal for math and reading which were almost identical to her 1997 fourth grade IEP.  They claim that the IEP failed to include the results of the February 2004 Evaluation Report which listed areas of need for Neena.  They also challenge the IEP's recommendation that Neena receive accommodations in her Twilight School classes because it failed to include specifications of the instructions and services.  Plaintiffs also complain that the IEP did not include any signatures of the participants.

Plaintiffs challenge Neena's June 7, 2004 IEP for not providing a description of Neena's present levels of performance or a method to determine such levels.  They also claim the goals were insufficient for math, reading and her attendance behavioral issues.  Plaintiffs challenge the functional assessment of behavior and behavior management plan as not identifying and describing the appropriate behaviors to address the attendance issues.  They claim that the plan failed to present a baseline level of performance and listed only one goal which was to improve attendance.  Plaintiffs also allege that this IEP did not include descriptions of specially designed instruction and services.

After a review of the record, I conclude that the IEPs were adequate to provide a meaningful educational benefit to Neena although they may not have offered the best possible education.  I find any errors alleged by plaintiffs to be de minimis and not outcome determinative as the District never had the opportunity to implement the IEPs and resolve any of the alleged deficiencies because of Neena's failure to attend school.  Neena's lack of attendance and refusal of services disrupted the ability to implement the IEPs and mitigated any failures to include baselines or specifics in the IEP.  See J.G. v. Abington Sch. Dist., 2008 WL 4633380, at *5 (E.D. Pa. Oct. 15, 2008), noting that failures to include certain baselines in the IEP were mitigated by the student not being at the school; Damian J., 2008 WL 91176, at *7, finding that the plaintiffs failed to show that the student was denied a meaningful educational benefit as the student's absences deprived the District of the opportunity to see if the revised IEP would work; S. v. Wissahickon Sch. Dist., 2008 WL 2876567, at *10 (E.D. Pa. July 24, 2008), noting that the student's consistent refusal to engage in the services constituted an insurmountable obstacle to implementation of the District's programs.  Plaintiffs have not pointed out contrary non-testimonial, extrinsic evidence to support their contention that I should not defer to and give due weight to the hearing officer's factual findings.  See L.E., 435 F.3d at 389 n.4.  Moreover, plaintiffs have not challenged the representation of Neena's absenteeism.  To find the IEPs insufficient based on plaintiff's claims would be to substitute my own notion of educational policy for those of the local school authorities.  See S.H., 336 F.3d at 270.

Additionally, although prior IEPs did not explicitly address the attendance issues, there is testimonial evidence concerning the District's efforts to get Neena to return to school.  There is testimony and extrinsic evidence that Neena was offered many options and that she refused them

until forced to return to school by the Truancy Court in approximately March 2005.  The hearing officer found the District representatives' testimony regarding their efforts to be credible and I must accept these determinations as plaintiffs have not presented any nontestimonial, extrinsic evidence to justify a contrary conclusion.  See L.E., 435 F.3d at 389 n.4.  I find that plaintiff have not asserted how their claims that the hearing officer incorrectly gave credit to the District for providing the Wilson tutoring or the Lindamood Bell program are outcome determinative considering the District's other efforts and payment of the services.  Because I find that sufficient efforts were made to address Neena's school attendance, I will not address plaintiffs' challenge to the hearing officer's findings of blame for Neena's absences and her handling of the link between Neena's disability and absences.

Therefore, I agree with the finding of the hearing officer and the Panel that Neena was not denied a FAPE and was not entitled to compensatory education from January 10, 2004 to June 15, 2005.

2.    Section 504 Claim

The Rehabilitation Act, 29 U.S.C. §§ 701 et seq., prohibits discrimination on the basis of disability within federally-funded programs.  This prohibition is specifically extended to public school systems in Section 504.  See 29 U.S.C. § 794(b)(2)(B).  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a) (2002).

The Court of Appeals has recognized that the substantive requirements of the

Rehabilitation Act's negative prohibition and the IDEA's affirmative duty have few differences.[12]

Ridgewood, 172 F.3d at 253.  The Court has "noted that the regulations implementing § 504

require school districts provide a free appropriate education to each qualified handicapped person

in [its] jurisdiction."  Ridgewood, 172 F.3d at 253.  "There are no bright line rules to determine

when a school district has provided an appropriate education as required by § 504 and when it

has not."  Molly L. v. Lower Merion Sch. Dist., 194 F. Supp.2d 422, 427 (E.D. Pa. 2002).

"[T]he failure to provide a free appropriate public education violates [the] IDEA and therefore

could violate § 504."  Ridgewood, 172 F.3d at 253.  However, a violation of the IDEA is not a

per se violation of § 504 and the elements of a § 504 must still be proved.  Andrew M. v. Del.

County Office of Mental Health and Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007);

Derrick F. v. Red Lion Area Sch. Dist., 2008 WL 4890178, at *12 (M.D. Pa. 2008).

To prevail on a claim under Section 504 of the Rehabilitation Act, plaintiffs must prove

that:  (1) Neena is disabled as defined by the IDEA; (2) she is otherwise qualified to participate in

school activities; (3) the District is the recipient of federal financial assistance and (4) Neena was

---

[12]   The IDEA and § 504 differ in the scope of their coverage.  "Although the two laws overlap significantly, it is well recognized that Section 504 covers more students than does [the] IDEA.  Students with disabilities who are eligible for services under [the] IDEA are also covered by the prohibitions against discrimination on the basis of disability in Section 504 and its implementing regulation at 34 CFR Part 104, but students covered only by Section 504 are not entitled to the rights and protections enumerated by [the] IDEA and its implementing regulations at 34 CFR Part 300."  Brendan K. ex rel. Lisa K. v. Easton Area School Dist., 2007 WL 1160377, at *12 (E.D. Pa. Apr. 16, 2007), citing Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist., 145 F.3d 95, 100 n.2 (2d Cir. 1998), noting "[t]he purposes of the Rehabilitation Act are similar to that of the IDEA, but the Rehabilitation Act is broader in scope. . . . The definition of 'individual with a disability' under § 504 of the Rehabilitation Act is broader in certain respects than the definition of a 'child with [a] disabilit[y]' under the IDEA."

excluded from participation in, denied the benefits of, or subject to discrimination at, the school.

Ridgewood, 172 F.3d at 253.  In addition, plaintiffs must demonstrate that the District knew or

reasonably should have known of her disability, but they need not prove that the District's

actions were intentional.  See id.

In this case, the only element of the Section 504 analysis at issue is the fourth.  The

District, relying on Eric H. v. Methacton School District, 265 F. Supp.2d 513, 522 (E.D. Pa.

2003),[13] argues that plaintiffs failed to show evidence that the District discriminated on the basis

of Neena's disability.  In Eric H., the plaintiffs asserted that the District discriminated against

---

[13] The District also lists K.R. v. Sch. Dist. of Phila., 2007 WL 2726236 (E.D. Pa. Sept. 14, 2007) for this proposition.  In K.R., the court found the § 504 claim sufficient to survive a motion to dismiss.  The District merely lists this case as supportive and does not clarify in what way the case supports its argument.  Even the June 26, 2008 decision in K.R. v. School District of Philadelphia, 2008 WL 2609810, at *7 (E.D. Pa. June 26, 2008) fails to provide the alleged support because unlike this case the court found there was no denial of a FAPE under the IDEA and the § 504 claim alleged was not identical to K.R.'s IDEA claim.

The District also claims the court in Damian J., 2008 WL 191176 denied monetary damages for Damian's § 504 claim because there was no proof of discrimination.  However, the District provides no reference to such a holding in the case and a review of Damian J. does not disclose such a holding.  Instead, it appears the court did not award compensatory damages because it awarded compensatory education and believed that was sufficient relief.  Damian J., 2008 WL 191176, at *7 n.15.

Additionally, the District claims that Lauren v. Colonial School District, 2007 WL 3085854 (E.D. Pa. Oct. 22, 2007) supports denial of plaintiffs' 504 claim and claim for compensatory damages because the Court stated that "where the parents do not show a distinct issue under Section 504, such as accessibility, the disposition in the administrative proceeding of the IDEA claim, resolves any alternative Section 504 claim."  In Lauren, the plaintiffs voluntarily withdrew their § 504 and IDEA claims for compensatory damages and no § 504 violation was found because the responsibilities under the IDEA were fulfilled and it was conceded that this meant the responsibilities under § 504 were as well.  As discussed, the responsibilities under the IDEA were not fulfilled in this case and therefore it is unclear how this case supports the District's argument.

Eric and the Court noted that the plaintiffs did not argue that the District violated the FAPE requirement of § 504.  Here, the claim relies on the same facts as the IDEA claim; that the District failed to provide Neena with a FAPE which excluded her from participation in and/or denied her the benefits of the school.  Additionally, the District asserts that plaintiffs must prove that Neena was treated differently than similarly situated students with disabilities but provides no support for such a requirement.

As I concluded above in my analysis of plaintiffs' IDEA claim, the District did not provide Neena with an appropriate education for the 1997-1998 school year through the 2001-2002 school year.  Neena's disability was the sole reason that she did not participate in or receive the benefits of the school that non-disabled children receive, a violation of § 504.  See Andrew M. v. Del. County Office of Mental Health and Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007), noting in dicta in a decision discussing Part C of the IDEA that violations of Part B of the IDEA for failing to provide a disabled child with a free and appropriate education also violates § 504 because "it is denying a disabled child a guaranteed education merely because of the child's disability."  No allegation that the denial of the appropriate education was done intentionally by the District is alleged or needed.  Thus, the relief accorded by the hearing officer and the Panel pursuant to the IDEA equally applies to Neena's Section 504 claim and summary judgment will be entered in favor of plaintiffs for this claim.

B.    Compensatory Damages

1.    IDEA

The IDEA provides that in a civil action the court "shall grant such relief as the court

determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  The Court of Appeals has not

decided whether "appropriate relief" under the IDEA includes compensatory damages.  <u>C.M. v.

Bd. of Educ. of Union County Reg'l High Sch. Dist.</u>, 128 Fed. Appx. 876, 880 (3d Cir. 2005),

recognizing that the Court has "not settled whether damages are recoverable in an action arising

solely under [the] IDEA;" <u>Bucks County Dep't of Mental Health/Mental Retardation v. Pa.</u>, 379

F.3d 61, 68 n. 5 (3d Cir. 2004), same; <u>Brandon V. v. Chichester School Dist.</u>, 2007 WL 2155722,

at *2 (E.D. Pa. July 25, 2007), same; <u>Hesling v. Avon Grove Sch. Dist.</u>, 428 F. Supp.2d 262, 273

(E.D. Pa. 2006), same.  The Court did not have occasion to address this issue in A.W. because

A.W. did not bring claims directly under the IDEA or § 504.  <u>A.W.</u>, 486 F.3d at 794 n.4.

The other Courts of Appeals that have addressed this issue have uniformly held that

compensatory damages are not recoverable under the IDEA or its predecessor, the EHA.  <u>See,

e.g.</u>, <u>Nieves-Marquez v. Puerto Rico</u>, 353 F.3d 108, 125 (1st Cir. 2003), concluding that money

damages are not available under the IDEA because the "IDEA's primary purpose is to ensure [a

free appropriate public education], not to serve as a tort-like mechanism for compensating

personal injury;" <u>Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.</u>, 288 F.3d 478,

483-86 (2d Cir. 2002), holding "that monetary damages are not available under the IDEA;"

<u>Sellers v. Sch. Bd. of Manassas</u>, 141 F.3d 524, 526-28 (4th Cir. 1998), holding that "tort-like

damages" are unavailable under the IDEA because they are "inconsistent with IDEA's statutory

scheme" and "present acute problems of measurability;" <u>Marvin H. v. Austin Indep. Sch. Dist.</u>,

714 F.2d 1348, 1356-57 (5th Cir. 1983), holding that "appropriate relief" authorized by EHA (the

IDEA's predecessor) includes only prospective relief, and "a damage remedy is not generally

consistent with the goals of the statute;" <u>Crocker v. Tenn. Secondary Sch. Athletic Ass'n</u>, 980

F.2d 382, 386-87 (6th Cir. 1992), holding that "appropriate relief" under EHA includes restitutionary types of relief but not general damages for emotional injury or injury to a dignitary interest; Charlie F. v. Bd. of Educ. of Skokie Sch. Dist., 98 F.3d 989, 991 (7th Cir. 1996), holding that "damages are not 'relief that is available under' the IDEA;" Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996), holding that plaintiffs' claims that defendants violated the IDEA by tightly wrapping disabled student in a blanket as a form of physical restraint may not be pursued in a § 1983 action because general and punitive damages for this type of alleged injury are not available under the IDEA; Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir. 1999), holding that "[a]lthough the IDEA allows courts to grant 'such relief as the court determines is appropriate,' ordinarily monetary damages are not available under that statute;" Powell v. Defore, 699 F.2d 1078, 1081 (11th Cir. 1983), recognizing that "[a]s a general rule, compensatory damages are not available under the [EHA];" but see Salley v. St. Tammany Parish Sch. Bd., 57 F.3d 458, 466 (5th Cir. 1995), affirming nominal damages award for an IDEA violation without discussing the availability of monetary damages under the IDEA.

Additionally, recent decisions by district judges in this Circuit have recognized that the Court of Appeals has not yet addressed this issue and followed the authority rejecting the availability of money damages directly under the IDEA.  See Brandon v. Chichester Sch. Dist., 2007 WL 2155722, at *2-3 (E.D. Pa. July 15, 2007), granting defendant's motion to dismiss IDEA claims based on money damages; Ronald E. v. Philadelphia Board of Education, 2007 WL 4225584, at *9-10 (E.D. Pa. Nov. 29, 2007), granting defendant's motion for summary judgment on IDEA claims based on money damages; J.L. ex rel. J.L. v. Ambridge Area School Dist., 2008 WL 509230, at *12 (W.D. Pa. Feb. 22, 2008), granting defendant's motion to dismiss plaintiffs'

claims for money damages under the IDEA; C.J. G. v. Scranton Sch. Dist., 2007 WL 4269816, at
*7-8 (M.D. Pa. Dec. 3, 2007), granting defendant's motion to dismiss IDEA claims for money
damages as such relief is not available.[14]

I agree with the overwhelming weight of authority that compensatory damages are
generally inconsistent with the purpose and statutory scheme of the IDEA and will not recognize
monetary damages as an available form of relief for the District's failure to provide Neena a
FAPE.  Compensatory equitable education is the appropriate relief.

_____

[14]  Plaintiffs cite cases to support a contrary argument.  However, the majority of the cases
cited by plaintiff are distinguishable.  For example, plaintiffs cite Florence County Sch. Dist.
Four v. Carter, 510 U.S. 10 (1993), Sch. Comm'n of Burlington v. Dep't of Ed., 471 U.S. 359
(1985) and Honig v. Doe, 484 U.S. 305 (1988) to support their proposition that courts may order
monetary damages under the IDEA, but these cases deal with extending the broad relief in the
IDEA to reimbursement for private school or an injunction which are not at issue here.  Plaintiffs
also cite the Court of Appeal's decision W.B. v. Matula, 67 F.3d 484, 495 (3d Cir. 1995) as
allowing for such damages.  However, as mentioned above the Court has stated that it has not
decided this issue.  Moreover, Matula addressed an IDEA claim brought under § 1983 and not a
direct IDEA claim.  In Irene and Gary B. v. Phila. Acad. Charter Sch., 2003 WL 24052009 (E.D.
Pa. Jan. 29, 2003), although the Court discussed whether the claim for compensatory damages
had to be exhausted in administrative proceedings and found that it did not, the Court did not
specifically address the issue of whether compensatory damages were available under the IDEA.
Moreover, unlike here, the plaintiffs in Irene and Gary B. alleged injuries beyond a denial of
FAPE.  In Susavage v. Bucks County Intermediate Unit, 2002 WL 109615 (E.D. Pa. Jan. 22,
2002), the Court stated that it would not preclude the parents of a deceased child from seeking
damages under the IDEA.  However, it specified that these damages were the monetary value of
the appropriate relief of educational services that could not be awarded because the child was
deceased, not compensatory damages when compensatory education was an available remedy.
Id. at 17.  Additionally, although plaintiffs cite the following cases for the proposition that
damages are available under the IDEA, I agree with the overwhelming weight of authority that
they are not:  Enright v. Springfield Sch. Dist., 2007 WL 041653, at *10 (E. D. Pa. Dec. 27,
2007); Damian J. v. Sch. Dist. of Phila., No. Civ. A. 06-3866 (E.D. Pa. Sept. 6, 2007), later
awarded only compensatory education in Damian J. v. Sch. Dist. of Phila., 2008 WL 191176, at
*7 n.15 (E.D. Pa. Jan. 22, 2008); J.F.v. Sch. Dist. of Phila., 2000 WL 361866 (E.D. Pa. Apr. 7,
2000).

2.    Section 504

In Matula, the Court of Appeals held that "plaintiffs may seek monetary damages directly under § 504," based on the general presumption that all appropriate remedies are available "unless Congress has expressly indicated otherwise."  Matula, 67 F.3d at 494, quoting Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 66 (1992).  In Franklin, the Supreme Court held that monetary damages are an available remedy in a Title IX action.  Because the Rehabilitation Act incorporates Title VI's remedies and Title IX is modeled after Title VI the Court concluded that the Supreme Court's "holding on Title IX in Franklin applies equally to Title VI and Section 504 cases."  Matula, 67 F.3d at 494, quoting Rodgers v. Magnet Cove Pub. Sch., 34 F.3d 642, 645 (8th Cir. 1994); see Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 279 (3d Cir. 1996), noting that Matula found "both injunctive relief and monetary damages are available under section 504." *4

The Court did not address this aspect of Matula in A.W. because, as noted above, plaintiff did not bring a claim directly under § 504 and only brought the claim under § 1983.  A.W., 486 F.3d at 794 n. 4.[15]  Accordingly, I will continue to treat Matula's holding regarding the availability of compensatory damages under the Rehabilitation Act as authoritative.

_____

[15]  The Court of Appeals discussed the remedies under the Rehabilitation Act stating:

The remedies for violation of Section 504 "are coextensive with the remedies available in a private cause of action brought under Title VI . . . ."  These remedies include compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract.

A.W., 486 F.3d at 804, quoting Barnes v. Gorman, 536 U.S. 181, 185 (2002).

However, the availability of compensatory damages does not mean that they are appropriate under the facts alleged in this matter.  In Matula, the Court of Appeals noted that absent clear direction to the contrary by Congress in § 504 the federal courts have the power to award any appropriate relief.  See Matula, 67 F.3d at 494, citing Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 70-71 (1992).  Plaintiffs' allegations for a violation of § 504 involve the same denial of FAPE at issue in their IDEA claim.  The complaint states that the educational losses, damages and injuries to the plaintiffs are a result of the District's failure to provide an appropriate education under IDEA and § 504.  Plaintiffs have not alleged and I can find no evidence of any harm other than the denial of a FAPE.  Moreover, plaintiffs state in their motion that all the evidence and information for the District's liability for compensatory education and damages is in the administrative record and that only the amount of damages need be determined.  A review of the administrative record and pleadings finds only allegations and evidence of injury caused by a denial of a FAPE which is most appropriately remedied under § 504 with the compensatory education awarded.[16]   This would be the case under the IDEA as well if monetary damages were available relief.

It is my sincere hope that Neena will take advantage of the compensatory education being awarded to her.

An appropriate Order follows.

---

[16]  This finding considers that the Panel's August 23, 2005 decision states the District agreed to reimburse plaintiffs for the summer 2002 independent educational evaluation and the Wilson certified reading instructor that provided Neena tutoring from June 23, 20023 through June 7, 2004.  Nothing from plaintiffs' pleadings suggest that reimbursement is an issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| NEENA S., A MINOR, BY AND THROUGH | : | CIVIL ACTION |
| HER PARENTS, ROBERT AND TAMI S., | : | NO. 05-5404 |
| AND ROBERT AND TAMI S., ADULTS, | : | |
| INDIVIDUALLY, AND ON THEIR OWN | : | |
| BEHALF | : | |
| | : | |
|       v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA | : | |


## <u>ORDER</u>

AND NOW, this 19th day of December 2008, upon consideration of the parties'
cross-motions for summary judgment, the responses thereto and the administrative record,
and for the reasons stated in the foregoing memorandum, it is ORDERED as follows:

1.  Defendant's motion for summary judgment on the administrative record for the
1997-1998 school year through the 2001-2002 school year and the period of January 10, 2005
through June 15, 2005 is GRANTED and defendant shall provide plaintiffs the compensatory
education as awarded for the 1997-1998 school year through the 2001-2002 school year.

2.  Defendant's motion for summary judgment for the period of the 2002-2003 school
year through January 9, 2004 is GRANTED.

2.  Defendant's motion for summary judgment is GRANTED with respect to

plaintiffs' § 1983 claim and plaintiffs' IDEA and Section 504 claims for compensatory damages and DENIED with respect to plaintiffs' Section 504 claim for compensatory education.

3.  Plaintiffs' motion for summary judgment is GRANTED with respect to its Section 504 claim for compensatory education and DENIED in all other respects.

4.  Plaintiffs shall submit a motion for attorney's fees by January 6, 2009.

5.  Judgment is entered in favor of defendant the School District of Philadelphia and against Neena S., a minor by and through her parents Robert and Tami S., for plaintiffs' claims concerning compensatory education under the IDEA, plaintiffs' compensatory damages claims under Section 504 and the IDEA and plaintiffs' Section 1983 claim and in favor of plaintiff Neena S., a minor by and through her parents Robert and Tami S., and against defendant the School District of Philadelphia for plaintiffs' Section 504 claim for compensatory education.

/s/ Thomas N. O'Neill, Jr.
THOMAS N. O'NEILL, JR., J.